### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| *THERESA M. WILLARD,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Docket No. 04-220-B-W* |
| | ) | |
| *JO ANNE B. BARNHART,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the issue whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from fibromyalgia, irritable bowel syndrome, hypertension, obesity, anxiety, post-traumatic stress disorder ("PTSD") and depression, is capable of returning to past relevant work or making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case be remanded for further development.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from fibromyalgia, irritable bowel

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on August 5, 2005, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

syndrome, hypertension, obesity, generalized anxiety disorder, PTSD and depressed mood, impairments that were severe but did not meet or equal those listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Findings 2-3, Record at 26; that she retained the residual functional capacity ("RFC") to perform medium work subject to certain limitations and, *inter alia*, to remember locations and work-like procedures, understand, remember and carry out very short and simple instructions, concentrate on routine tasks for a normal workday/week, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, ask simple questions or request assistance, interact appropriately with co-workers and supervisors, adjust to minor changes (best predictable), be aware of normal hazards and take appropriate precautions, and travel in unfamiliar places or use public transportation, Finding 5, *id*.; that her impairments did not prevent her performance of past relevant work or other work existing in significant numbers in the national economy, Finding 7, *id*.; and that she therefore had not been under a disability at any time through the date of decision, Finding 8, *id*. The Appeals Council declined to review the decision, *id*. at 6-9, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential process but went on to make an alternative finding at Step 5. At Step 4, the claimant bears the burden of proof of inability to return to

past relevant work.  20 C.F.R. § 416.920(e); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  At this step the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work.  20 C.F.R. § 416.920(e); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

At Step 5 the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. § 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff asserts that the administrative law judge made flawed physical and mental RFC findings.  *See generally* Statement of Specific Errors ("Statement of Errors") (Docket No. 6).  I agree that the physical RFC finding is sufficiently flawed to merit reversal and remand for further proceedings.

## I.  Discussion

With respect to physical RFC the administrative law judge stated, *inter alia*, "the undersigned concludes that the opinion of the State agency medical examiners, who assessed claimant retained the residual functional capacity to perform a full range of work at the medium exertional level, was well substantiated by the evidence of record and accords significant weight to those opinions[,]" Record at 24.

As the plaintiff points out, *see* Statement of Errors at 2, this statement is inaccurate.  The Record contains two markedly dissimilar physical RFC assessments by Disability Determination Services ("DDS") non-examining consultants.  One consultant, Lawrence P. Johnson, M.D., did find

the plaintiff capable of performing work at the medium exertional level. *See* Record at 299 (plaintiff capable, *inter alia*, of lifting and/or carrying fifty pounds occasionally and twenty-five pounds frequently, standing and/or walking with normal breaks for a total of about six hours in an eight-hour workday and sitting with normal breaks for a total of about six hours in an eight-hour workday); 20 C.F.R. § 416.967(b)-(c) (medium work entails "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds"; person who can do medium work can do light or sedentary work; light work entails, *inter alia*, "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls.").

However, the second consultant, Joseph R. Cataldo, M.D., found the plaintiff capable, *inter alia*, of lifting and/or carrying twenty pounds occasionally and ten pounds frequently, standing and/or walking with normal breaks for a total of at least two hours in an eight-hour workday and sitting with normal breaks for a total of about six hours in an eight-hour workday. *See* Record at 247. This assessment was consistent with the full range of sedentary – not medium or light – work. *See* 20 C.F.R. § 416.967(a)-(c).[2]

As the plaintiff speculates, *see* Statement of Errors at 3-4, the etiology of the clash may be Dr. Johnson's seeming ignorance of her fibromyalgia diagnosis – a diagnosis that the administrative law judge chose to credit, *see* Finding 2, Record at 26. Whereas Dr. Cataldo acknowledged its existence,

---

[2] At oral argument, counsel for the commissioner posited that Dr. Cataldo's findings were consistent with light, not sedentary, work, because per those findings the plaintiff retained the full-time ability to sit and operate leg and arm controls, which is described as "light" work. Nonetheless, a claimant is not deemed able to undertake the "full range" of light work unless he/she can perform "substantially all" of the described activities. *See, e.g.,* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."). In any event, what matters for purposes of the instant discussion is that the administrative law judge wrongly intimated that Dr. Cataldo's findings were consistent with those of Dr. Johnson and with a full range of "medium" work. *See* Record at 24.

*see* Record at 246, 252, Dr. Johnson did not, *see id*. at 298-305.[3]  In any event, regardless of the reasons for the conflict, the administrative law judge had a duty to resolve it.  A court cannot step into the breach and resolve such a material evidentiary conflict in the first instance on review.  *See* Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004) ("SSR 96-8p"), at 149 ("In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.") (footnote omitted); *Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence.  But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

This fundamental failure of adjudication necessitates reversal and remand for further proceedings, affording the plaintiff the benefit of a considered choice between the clashing physical RFC assessments of record.

For the benefit of the parties on remand, I note that the plaintiff's remaining argument, concerning asserted flaws in the administrative law judge's mental RFC ("MRFC") finding, is without

---

[3] Fibromyalgia is defined as "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause."  Stedman's Medical Dictionary 671 (27th ed. 2000).  "The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites."  *Id*.  As the plaintiff notes, *see* Statement of Errors at 3-4, John H. Yost, D.O., assessed her in 2000 as having "[c]hronic diffuse pain with non-restorative sleep cycle and positive tender point examination [in thirteen of eighteen sites] consistent with fibromyalgia[,]" Record at 226.  At oral argument, counsel for the commissioner demonstrated that Dr. Johnson had taken note of records that happen to contain the fibromyalgia diagnosis.  *Compare, e.g*., Record at 191 *with id*. at 300.  Yet, puzzlingly, Dr. Johnson made no note of the fibromyalgia diagnosis itself.  In any event, whatever the reason for the discrepancy between Drs. Cataldo's and Johnson's reports, the administrative law judge committed error in seemingly entirely overlooking (and thus not resolving) the clash.

merit.  The administrative law judge adopted, and asked the vocational expert at hearing to assume, the MRFC assessment of non-examining DDS consultant Peter G. Allen, Ph.D.  *Compare* Finding 5, Record at 26 *with id.* at 55, 320-23.[4]  The plaintiff echoes her physical-RFC argument in positing that the administrative law judge failed to address a significant conflict between the findings of Dr. Allen and a second DDS non-examining consultant, Lewis F. Lester, Ph.D.  *See* Statement of Errors at 8. She suggests that the Allen MRFC should have been accorded significantly less weight than that of Dr. Lester inasmuch as the Allen MRFC was not only inconsistent with other relevant evidence of record but also internally inconsistent.  *See id.* at 7-8.

At oral argument, counsel for the plaintiff posited that Dr. Allen's views were internally inconsistent inasmuch as:

1.      The PRTF finding that the plaintiff had "moderate" difficulties in maintaining concentration, persistence or pace, *see* Record at 316, clashed with the MRFC finding that she was "markedly limited" in the ability to understand, remember and carry out detailed instructions, *see id.* at 320.

2.      The PRTF finding that she had "mild" to "moderate" difficulties in maintaining social functioning, *see id.* at 316, clashed with the MRFC finding that she was "moderately limited" to "markedly limited" in ability to interact appropriately with the general public, *see id.* at 321.

I disagree.  In so arguing, the plaintiff overlooks the fact that the PRTF summarizes overall findings in four broad categories, while the MRFC rates twenty categories of mental functioning. *Compare id.* at 316 *with id.* at 320-21.  Dr. Allen's finding that the plaintiff was "markedly limited" in

---

[4] As the plaintiff notes, *see* Statement of Errors at 5 n.1, the administrative law judge phrased his official MRFC finding differently than did Dr. Allen, *compare* Finding 5, Record at 26, *with id.* at 320-23 – in fact, portions of the administrative law judge's MRFC finding are so garbled as to be incomprehensible, *see* Finding 5, Record at 26.  Nonetheless, inasmuch as the vocational expert based his testimony directly on Dr. Allen's MRFC report, which he was provided at hearing, any error in the administrative law judge's characterization of MRFC is harmless.

two of fourteen MRFC categories relating to understanding, memory, concentration and persistence, but "not significantly limited" or "moderately limited" in the remainder, is consistent with the overall "moderate" rating in the PRTF category of concentration, persistence or pace.  *See id*.  Likewise, Dr. Allen's MRFC finding that the plaintiff was "moderately limited" to "markedly limited" in one of five categories of social interaction, while "not significantly limited" in three others and "not significantly limited" to "moderately limited" in the final one, is consistent with the overall "mild" to "moderate" rating in the PRTF category of social functioning.  *Compare id*. at 316 *with id*. at 321.

Nor is the plaintiff's argument that Dr. Allen's views are "isolated" from the weight of the remaining relevant evidence, including Dr. Lester's opinion, *see* Statement of Errors at 7, persuasive.  Oddly, in so arguing, she omits reference to Dr. Lester's MRFC assessment and relies instead on the "B criteria" findings in his PRTF.  *See id*. at 6; *see also* Record at 260-63, 294.  This is like comparing apples with oranges.  The commissioner prescribes a psychiatric review technique that adjudicators must follow in assessing whether, at Step 1, a claimant has medically determinable mental impairment(s); if so, whether, at Steps 2 and 3, such impairments are severe and meet or equal a Listing (a determination arrived at with the aid of a PRTF); and, if one proceeds to Steps 4 and 5, the degree to which such impairments impact RFC (an MRFC assessment). *See* 20 C.F.R. § 416.920a; *see also* Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004) ("SSR 96-8p"), at 147 ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria [of a PRTF] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment[.]").

As counsel for the plaintiff acknowledged at oral argument, when one compares apples with apples, the Lester and Allen MRFC assessments for the most part line up. *Compare* Record at 260-61 *with id.* at 320-21. Drs. Lester and Allen agreed with respect to thirteen of twenty categories – for example, finding the plaintiff "markedly limited" in ability to understand, remember and carry out detailed instructions and "moderately limited" in ability to maintain attention and concentration for extended periods and to respond appropriately to changes in the work setting. *Compare id.* at 260-61 *with id.* at 320-21. Their differences with respect to the remaining seven categories are not pronounced; for example, while Dr. Allen found the plaintiff "not significantly limited" to "moderately limited" in (i) ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances and (ii) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, Dr. Lester found her "moderately limited" in those spheres. *Compare id.* at 260-61 *with id.* at 320-21.

By contrast, the MRFC of examining psychologist Kim Tousignant, Psy.D., LCPC, which the plaintiff characterizes as consistent with that of Dr. Lester but at odds with that of Dr. Allen, *see* Statement of Errors at 7, differs markedly from those of both Drs. Allen and Lester, *see* Record at 405 (Tousignant MRFC) (finding, for example, extreme limitation in ability to maintain attention and concentration for extended periods, to work with or near others without being distracted by them and to complete a normal workday or workweek). As the administrative law judge noted in a thorough and persuasive discussion rejecting the Tousignant opinion, Dr. Tousignant's Global Assessment of Functioning ("GAF") rating of 29 was inconsistent not only with the plaintiff's stated level of activity

8

but also with the GAF rating of 55 of her treating psychiatrist, Takeo Kawamura, M.D.  *See* Record at 24, 403, 412.[5]

   In short, although the plaintiff asserts that "Dr. Allen's views stand in isolation[,]" Statement of Errors at 7, they are largely consistent with the views of Dr. Lester.  The administrative law judge reasonably found the views of Dr. Tousignant, instead, to be at odds with the weight of the relevant evidence.

## II.  Conclusion

   For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

   *A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

   *Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

   Dated this 9th day of August, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

[5] A GAF, or Global Assessment of Functioning, score represents "the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR").  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.*  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34.  A score of 29 reflects "[b]ehavior [that] is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).  *Id.* (boldface omitted).  By contrast, a GAF score of 55 reflects "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  *Id.* (boldface omitted).